UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC R. GUIFFRE,

    Plaintiff,    Civil Action No. 11-12009

v.    HON. MARK A. GOLDSMITH
U.S. District Judge
HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL    U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Marc R. Guiffre brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED (Doc. #15), and that Plaintiff's Motion for Summary Judgment (Doc. #12) be DENIED.

## PROCEDURAL HISTORY

On August 27, 2007, Plaintiff filed applications for DIB and SSI, alleging disability as of June 2, 2006 (Tr. 90-99). After the initial denial of benefits, Plaintiff requested an

administrative hearing, held on December 9, 2009 before Administrative Law Judge ("ALJ") Henry Perez (Tr. 28). Plaintiff, represented by Mark Lippman, testified (30-42), as did Vocational Expert ("VE") Elizabeth Pasakowski (Tr. 42-45). On January 28, 2010, ALJ Perez found Plaintiff not disabled (Tr. 23-24). On March 24, 2011, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on May 6, 2011. *Docket #1*.

## BACKGROUND FACTS

Plaintiff, born February 26, 1972, was 37 when the ALJ issued his decision (Tr. 24, 90). He completed high school and received some vocational training (Tr. 116). He worked previously as a service technician (Tr. 112). He alleges disability as a result of disc herniations and fractures, fatigue, sleep disturbances, asthma, tachycardia, and anxiety (Tr. 111).

### A. Plaintiff's Testimony

Plaintiff testified that he had received training in "restaurant repair" (Tr. 30-31). He stated that his former job repairing mechanical equipment required him to lift up to 110 pounds (Tr. 31). He indicated that he stopped working in June, 2006 after injuring his back at work (Tr. 31). He reported that despite epidural injections and other conservative treatment, his pain persisted (Tr. 33). He alleged that he was unable to afford back surgery recommended by one surgeon and that his treatment was limited to taking Vicodin for pain control (Tr. 33-34). He acknowledged that another surgeon found that he was not a good candidate for surgery (Tr. 35). He testified that in addition to back problems, he experienced a seizure in July, 2009 (Tr. 36). He reported taking Tegretol, Seroquel and Risperdal for

-2-

neurological problems (Tr. 36).

Plaintiff estimated that he could sit for approximately 90 minutes before changing position (Tr. 37). He opined that he was incapable of sitting for more than three hours, standing for more than two-and-a-half to three hours, or walking for more than 30 minutes in an eight-hour workday (Tr. 37). He stated that he was unable to lift more than 20 pounds (Tr. 38). He denied medication side effects (Tr. 38). Plaintiff alleged that his "schizoaffective" condition created racing thoughts and the inability to sit still (Tr. 38). He alleged that his inability to focus prevented him for performing any job (Tr. 39). He stated that his daily activities were limited to vacuuming, dishwashing, taking out the garbage, and driving occasionally (Tr. 40). He stated that he was unable to drive for more than two hours because of back problems (Tr. 40). On a scale of 1 to 10, he rated his back pain as a "7 or 8" with medication and a "10" without (Tr. 41). He also reported that he used an inhaler for asthma (Tr. 42).

    **B.**    **Medical Evidence**

### 1. Treating Sources

In January, 2006, Plaintiff reported fatigue, requesting blood sugar testing (Tr. 218). A February, 2006 imaging study of the right foot was unremarkable (Tr. 215). Subsequent to the June, 2006 workplace injury, a September, 2006 chest x-ray was normal (Tr. 212). An October, 2006 MRI of the thoracic spine showed disc protrusions at T3-T4 and T4-T5, and mild degenerative changes but no other abnormalities (Tr. 207).

In November, 2006, chiropractor William A. Purdy remarked that he had

recommended lifting restrictions of no more than 25 pounds for the two-week period following Plaintiff's June, 2006 injury (Tr. 156, 167). December, 2006 correspondence shows that Plaintiff's chiropractic bills were paid by Workers' Compensation for the period between June and November, 2006 after which time benefits were terminated (Tr. 189). The same month, Khan Sayeed, M.D. proposed epidural injections to the thoracic spine (Tr. 199). Plaintiff underwent pain management treatment in April, 2007 (Tr. 191-192). Dr. Sayeed deemed Plaintiff's prognosis "good," noting an improvement after treatment (Tr. 191). The same month, Plaintiff reported ongoing symptoms of asthma (Tr. 197).

July, 2007 imaging studies of the dorsal spine were unremarkable (Tr. 196). Imaging studies of the thoracic spine showed a moderate disc herniation at T3-T4 and small herniations at T4-T5, T5-T6, and T7-T8 (Tr. 240). A chest x-ray was normal (Tr. 249). The same month, Alan J. Robertson, M.D. noted Plaintiff's report of continual back pain since the June, 2006 workplace injury (Tr. 266). Dr. Robertson remarked that Plaintiff was currently taking prednisone, albuterol and an oral antibiotic for asthma, but continued to smoke a half pack each day (Tr. 267). Citing imaging studies of the thoracic spine, he noted intervertebral disc extrusion at T3-4 and T4-5(Tr. 269). He directed Plaintiff to avoid activities placing strain on the upper back (Tr. 270). Dr. Robertson opined that Plaintiff was an "appropriate candidate" for minimally invasive surgery (Tr. 270). Plaintiff stated that one Tramadol did not relieve his pain but that two pills were "helpful" (Tr. 263). The following month, Dr. Robertson opined that Plaintiff required a surgical decompression (Tr. 259). Plaintiff reported intermittent numbness in all extremities (Tr. 256). Dr. Miguel Lis-

Plannells, M.D. examined Plaintiff, finding a limited range of thoracic spine motion but a normal gait and no muscle atrophy (Tr. 288). In September, 2007, Dr. Lis-Plannells observed full muscle strength in all extremities but found that thoracic spine problems rendered Plaintiff disabled (Tr. 284). Plaintiff characterized his pain as a "7 to 8" on a scale of 1 to 10 (Tr. 281). The following month, Dr. Lis-Plannells noted that insurance coverage problems prevented Plaintiff from undergoing surgery (Tr. 272).

In September, 2007, Plaintiff sought emergency treatment for lumbar strain (Tr. 235). The same month, Grant Hyatt, M.D. performed a consultive physical examination, noting Plaintiff's complaints of sleep interruption due to back pain (Tr. 334). He found a mildly reduced range of spine motion (Tr. 334). Plaintiff exhibited good muscle tone (Tr. 336). Due to the above-referenced disc herniations of the thoracic spine, Dr. Hyatt recommended lifting restrictions of 20 to 25 pounds, and the avoidance of bending, twisting, stooping, or overhead work (Tr. 339). Dr. Hyatt opined that thoracic surgery should be considered (Tr. 339).

The following month, Dr. Robertson deemed Plaintiff's prognosis "poor" without surgery (Tr. 254). He noted that Plaintiff's symptoms of anxiety were well controlled with Xanax (Tr. 251). In November, 2007, Dr. Robertson, noting Plaintiff's financial constraints, stated that the need for surgery was "well established" (Tr. 369). However, the same month, Mic Perez-Cruet, M.D., noting multiple thoracic spine herniations, remarked that such herniations were "not uncommon" and did not warrant surgical intervention (Tr. 372). The same month, Dr. Robertson noted that Plaintiff was overusing Diazepam (Valium) (Tr. 367).

In January, 2008, Dr. Robertson refused Plaintiff's request for a prescription for an opiate (Tramadol) and Diazepam (or any other medication), noting Plaintiff's earlier misuse of Diazepam (Tr. 361). He advised Plaintiff's father to discard any remaining pain medication (Tr. 361). In March, 2008, Plaintiff stated that Hydrocodone, a synthetic opiate, was effective in controlling his pain (Tr. 355). June, 2008 treating notes state that Plaintiff continued to take Hydrocodone (Tr. 352). In March, 2009, Plaintiff reported that Hydrocodone was not working "quite as well" as when originally prescribed (Tr. 345). In June, 2009, Plaintiff reported good results from an increased dosage of Hydrocodone (Tr. 344). The following month, Venkata R. Jasty, M.D. conducted a psychiatric intake examination of Plaintiff, noting that emergency room personnel, unable to find a physical basis for a recent grand mal seizure, had diagnosed him with schizophrenia, alcoholism, and a bipolar disorder (Tr. 401-416).

Dr. Robertson's August, 2009 notes also state that Plaintiff experienced a grand mal seizure on July 4, 2009 and that he was diagnosed with schizophrenia and prescribed Tegretol, Seroquel, Risperdal, and Cogentin (Tr. 341). October, 2009 psychiatric treating notes by Dr. Jasty state that Plaintiff felt "pretty good," and did not experience mood swings or sleeping problems (Tr. 373). Plaintiff also denied hallucinations or delusions (Tr. 374). He reported only mild depression and anxiety and exhibited a normal effect (Tr. 375-376). His condition was deemed stable (Tr. 377). Dr. Jasty assigned Plaintiff a GAF of 55[1] (Tr.

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric

378). In June, 2010, Dr. Jasty composed a letter on behalf of the current disability claim, stating that Plaintiff "was currently receiving psychiatric care . . . and was unable to work at this time"[2] (Tr. 418).

### 2. Consultive and Non-treating Sources

In November, 2007, Moises Alviar, M.D. performed a consultive physical examination of Plaintiff on behalf of the SSA (Tr. 292-294). Plaintiff reported that he sustained a neck injury on a recent trip to Florida (Tr. 292). He stated that he had experienced back problems from the age of 16 forward (Tr. 292). Plaintiff alleged that he had experienced a "panic attack" in the previous month (Tr. 293). A physical examination showed a normal gait and finger dexterity, and only a slight decrease in lumbar and cervical spine range of motion (Tr. 294-295, 298). Dr. Alviar noted the presence of "chronic persistent" back pain and asthma, as well as two panic attacks (Tr. 294).

The same month, Atul C. Shah, M.D. performed a consultive psychological evaluation of Plaintiff on behalf of the SSA (Tr. 300-302). Plaintiff reported depression as a result of his inability to work (Tr. 300). He also reported anxiety as a result of isolation, stress, and financial constrictions (Tr. 300). He denied mood swings or obsessive compulsive behavior (Tr. 300). He reported that taking Xanax helped his depression and anxiety (Tr. 300). Dr.

---

Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

[2]Dr. Jasty's statement was composed subsequent to the January, 2010 administrative decision.

Shah assigned Plaintiff a GAF of 45, opining that he would be unable to manage his benefit funds [3] (Tr. 302).

In January, 2008, a non-examining Mental Residual Functional Capacity Assessment by Edward Czarnecki, Ph.D. found that Plaintiff was moderately limited in the ability to understand and carry out detailed instructions or maintain concentration for extended periods (Tr. 304). Plaintiff was also deemed moderately limited in the ability to interact appropriately with the general public and adapt to workplace changes (Tr. 305). Dr. Czarnecki, noting that Plaintiff had not sought psychological treatment, found that Plaintiff was capable of "simple work activity" with "low stress social demands" (Tr. 306). Dr. Czarnecki also completed a Psychiatric Review Technique, finding the presence of affective and anxiety-related disorders (Tr. 308, 311, 313). He found that Plaintiff experienced moderate deficiencies in maintaining concentration, persistence, or pace, but experienced otherwise mild psychological symptoms (Tr. 318).

The same month, Jack Kaufman, M.D. performed a non-examining Physical Residual Functional Capacity Assessment, finding that Plaintiff was capable of lifting 20 pounds occasionally, and 10 frequently; sitting, standing, or walking six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 324). Dr. Kaufman found the

---

[3] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 327).

### C.     Vocational Expert Testimony

VE Elizabeth Pasakowski classified Plaintiff's former work as a service technician as skilled and exertionally "heavy to very heavy" [4] (Tr.43). The VE found that Plaintiff's job skills were transferrable to 1,300 exertionally medium jobs in the local economy (Tr. 43). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work background:

> [A]ssume . . . exertional limitations of lifting 20 pounds occasionally, 10 pounds frequently; we have sitting, standing and walking six hours; jobs that would avoid moderate exposure to respiratory irritants; and jobs that would provide for routine production and stress and simple job assignments. Putting this individual at the unskilled level, could such a person be expected to perform the Claimant's past relevant work? (Tr. 44).

The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's past relevant work, but could perform the light, "sit/stand" option work

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

of a cashier (1,700 jobs in the regional economy); sorter (2,000); packer (1,100); and assembler (1,500). The VE found that if Plaintiff's testimony that he was unable to lift more than 20 pounds were credited, he could perform a reduced range of work as a sorter (1,200); packer (1,100); inspector (2,100); and cashier (1,100) (Tr. 45). However, she stated that if Plaintiff's testimony of significant concentrational problems and constant pain were fully credited, he would be unable to perform any work (Tr. 45). She concluded by stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for her testimony regarding a sit/stand work option which was based on her own professional experience (Tr. 45).

### D. The ALJ's Decision

Citing the medical records, ALJ Perez determined that Plaintiff experienced the severe impairments of "thoracic myelopathy, schizoaffective disorder, and a mood disorder," finding however that none of the conditions met or medically equaled one of the impairments found in 20 C.F.R. Part 404 Appendix 1 Subpart P (Tr. 17-18).

The ALJ found that Plaintiff retained the Residual Functional Capacity to perform unskilled, exertionally light work with the following limitations:

> [L]ift 20 pounds occasionally and 10 pounds frequently and sit, stand, and walk for up to six hours each in an eight-hour day. Claimant should avoid moderate exposure to respiratory irritants. Mentally, Claimant is limited to unskilled jobs that provide routine production and stress and simple job assignments (Tr. 19).

Adopting the VE's job numbers, the ALJ found that although Plaintiff was unable to perform any past relevant jobs, he could work as a cashier, sorter, packer, and assembler (Tr. 23).

The ALJ discounted Plaintiff allegations of physical limitations, noting that objective testing did not support his professed level of impairment (Tr. 20-21). He observed that Plaintiff himself acknowledged that he performed household chores and was able to drive for up to two hours at a stretch (Tr. 22). The ALJ cited psychological treating records stating that Plaintiff experienced "very mild depression and anxiety" (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Substantial Evidence Supports the ALJ's Findings

Plaintiff, proceeding *pro se*, argues that a combination of physical and mental conditions prevent him from performing any work. *Docket #12.* Aside from physical limitations brought on by back problems and asthma, he contends that he experiences concentrational problems as a result of medication, a bipolar disorder, and schizophrenia.

*Id.*

The pleadings of a *pro se* litigant are to be liberally construed. *See Martin v. Overton,* 391 F.3d 710, 712 (6th Cir.2004), citing *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison,* 203 F.3d 410, 414 (6th Cir.2000) (*pro se* pleadings are held to "an especially liberal standard"). Further, in Social Security cases, the failure to submit a brief or a full blown legal argument "[is] not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua sponte,* that grounds exist for reversal. *See Wright v. Commissioner of Social Sec. WL* 5420990, *2 -3 (E.D.Mich.2010)(Friedman, J.).

Nonetheless, the ALJ's findings, both substantively and procedural adequate, do not provide a basis for remand. The ALJ acknowledged workplace limitations as a result of a thoracic spine condition at Step Two of the administrative sequence and again in the RFC, imposing lifting restrictions of 20 pounds or less (Tr. 17, 19). The lifting limitations found in the RFC are consistent and even somewhat more stringent than examining and treating source statements that Plaintiff was precluded from lifting more than *25* pounds (Tr. 156, 339). Likewise, the ALJ noted that despite the diagnoses of mental conditions, Plaintiff reported that he did not experience problems getting along with others and was able to engage in a variety of household chores (Tr. 18). The ALJ's summation of his mental capacities (Tr. 21) reflects Dr. Jasty's findings that Plaintiff did not experience mood swings, sleeping problems, or difficulty interacting with others (Tr. 373-377). Dr. Jasty's

psychological findings, reviewed in their entirety, also stating that Plaintiff exhibited a normal affect, do not suggest that Plaintiff was incapable of "unskilled work" with "routine production and stress" as found in the RFC (Tr. 19, 21, 375-376).

The ALJ's reasons for rejecting Drs. Lis-Planells and Robertson's statements that Plaintiff was disabled are also well supported and explained.[5] The ALJ noted that these physicians' findings that Plaintiff required surgery were contradicted by Dr. Perez-Cruet's conclusion that back surgery was not advisable (Tr. 21, 372). The ALJ also pointed out that while Dr. Robertson refilled prescriptions for pain killers, he seldom performed physical examinations of Plaintiff (Tr. 21). The ALJ also noted that the term "disability," as used by Drs. Lis-Pannells and Robertson, appeared to refer to Plaintiff's inability to perform his former job rather than *any* job as required to show disability by the SSA (Tr. 21). Because the same records also refer to Plaintiff's Workers' Compensation claim, the ALJ's "former work" rather than "all work" inference was reasonable. The ALJ also observed that the "disability" findings were undermined by the fact that Plaintiff continued to perform laundry chores, mow the lawn, shop, and perform self care activities (Tr. 22). While Plaintiff argues

---

[5]

"If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (internal quotation marks omitted)(citing *Wilson v. CSS,* 378 F.3d 541, 544; 20 C.F.R. § 404.1527(d)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2).

presently that medication side effects also prevent him from working, he denied such side effects at the administrative hearing (Tr. 38). Because the ALJ's findings are easily supported by substantial evidence, a remand is not warranted.

### B. Sentence Six Material

The transcript also includes evidence submitted subsequent to the January 28, 2010 administrative decision. On June 7, 2010, Dr. Jasty submitted a letter on behalf of Plaintiff's disability claim, stated in its entirety as follows:

> Pursuant to your request, we are happy to provide the following information: You are currently receiving psychiatric care at our clinic and are unable to work at this time (Tr. 418).

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, *but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g). *Hollon ex rel. Hollon v. Comm'r of Soc.*

*Sec.,* 447 F.3d 477, 483 (6th Cir.2006).

Dr. Jasty's June, 2010 letter does not constitute grounds for a Sentence Six remand. First, Plaintiff has provided no "good cause" for failing to provide the "disability" opinion prior to the January 28, 2010 administrative decision. The fact that the evidence was not created until after the administrative opinion was issued does not constitute good cause. To the contrary, it appears that the psychiatrist's June, 2010 opinion was requested and submitted for the purpose of rebutting the ALJ's non-disability decision. "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky.2009) (*citing Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991)).

Second, Plaintiff cannot show that the newer evidence is material to the ALJ's decision. The two-sentence opinion letter, composed in June, 2010, cannot be construed to pertain to Plaintiff's condition *prior* to the January 28, 2010 decision. As such, it is intrinsically immaterial to the present determination. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988). If Plaintiff believes that his condition has deteriorated since the time of the decision, the proper remedy is to initiate a new claim for benefits. *Id.*

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's physical or psychological limitations. Nonetheless,

the finding that he is capable of a limited range of light work is supported by substantial evidence. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, and should not be disturbed by this Court  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment (Doc. #15) be GRANTED, and that Plaintiff's Motion for Summary Judgment (Doc. #12) be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                s/ R. Steven Whalen
                R. STEVEN WHALEN
                UNITED STATES MAGISTRATE JUDGE

Date: May 31, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on May 31, 2012.

| Marc R. Guiffre | s/Johnetta M. Curry-Williams |
| 24925 Panama | Case Manager |
| Warren, MI 48091 | |